UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**DARTISHA MCKINNES and STEVE
FLEMMING,** individually, and on
behalf of others similarly situated,

      Plaintiffs,

                                     Case No. _____

vs.

**ATX INC.**, a Michigan corporation,
**BENSON OGHOUFO**, an individual,
**ANTONIO GEORGE**, an individual,
jointly and severally,

      Defendants.
_____

## COLLECTIVE AND CLASS ACTION COMPLAINT
## WITH JURY DEMAND

Plaintiffs, Dartisha McKinnes and Steve Flemming, individually and on behalf of all others similarly situated, by and through their attorneys, hereby brings this Collective and Class Action Complaint against Defendants, ATX Inc., Benson Oghoufo and Antonio George (hereinafter referred to as "Defendants"), and state as follows:

## INTRODUCTION

1.     This is a collective action brought pursuant to 29 U.S.C. § 216(b) by Plaintiffs, Dartisha McKinnes and Steve Flemming (hereinafter referred to as "Plaintiffs"), individually and on behalf of all similarly situated persons employed

by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

2.      Defendants employed Plaintiffs as hourly "Delivery Associates" responsible for delivering packages from an Amazon warehouse in Romulus, Michigan to Amazon's customers located throughout Metropolitan Detroit.

3.      At all times throughout their employment, Plaintiffs worked in excess of 40 hours per week but Defendants maintained a number of illegal compensation policies pursuant to which they failed and refused to pay Plaintiffs (and their other Delivery Associates) for all hours worked and pursuant to which they failed and refused to pay Plaintiffs (and their other Delivery Associates) time-and-a-half for hours worked in excess of 40 hours per week.

4.      Defendants were obligated by the FLSA to compensate Plaintiffs for all hours worked for and for work performed beyond 40 hours in each given workweek at a rate one and one-half times Plaintiffs' normal hourly rates.

5.      Defendants were aware of their obligations to compensate Plaintiffs for all hours worked and for work performed beyond 40 hours in a workweek during the relevant time period at one and one-half times Plaintiffs' regularly hourly rates. Defendants nevertheless failed and refused to pay Plaintiffs for all hours worked and for work performed beyond 40 hours in each given workweek during the relevant time frame at a rate one and one-half times Plaintiffs' normal hourly rates.

Defendants' conduct in that regard amounts to a willful violation of the provisions of the FLSA.

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because it raises a federal question under 29 U.S.C. § 201, *et seq*.

7.     Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

8.     This Court has personal jurisdiction over Defendants because Defendants, at all relevant times, conducted and continue to conduct business within the State of Michigan.

9.     Defendants' annual sales exceed $500,000 and Defendants' have more than two employees, so the FLSA applies in this case on an enterprise basis. Defendants' Delivery Associates engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

10.     This Court has jurisdiction over Plaintiffs' state law claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).   The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of

interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members are citizens of different states.

11.     A private party may also bring an action for damages for unjust enrichment under the common law.   Plaintiffs' unjust enrichment claims originate from the same facts that form the basis of their federal claims.   Thus, the Court has supplemental jurisdiction over Plaintiffs' unjust enrichment claims pursuant to 28 U.S.C. §1367.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants conduct business in this district, employ Plaintiffs and many similarly situated individuals in this district, and a substantial portion of the events giving rise to Plaintiffs' claims occurred in this district.

## **PARTIES**

13.     Plaintiff, Dartisha McKinnes, is a resident of Lincoln Park, Michigan, and was employed by Defendants as an hourly Delivery Associate from approximately June 22, 2019 to August 26, 2019.   Plaintiff McKinnes signed a consent form to join this lawsuit, which is attached to this Complaint as ***Exhibit A***.

14.     Plaintiff, Steve Flemming, is a resident of Redford, Michigan, and was employed by Defendants as an hourly Delivery Associate from approximately June 22, 2019 to August 26, 2019.   Plaintiff Flemming signed a consent form to join this

4

lawsuit, which is attached to this Complaint as ***Exhibit B***.

15.     Additional Opt-In Plaintiffs were or are still employed by Defendants as Delivery Associates during the past three years and their consent forms will also be filed in this case.

16.     Defendant, ATX Inc., is a Michigan corporation with its headquarters and principal offices located at 24056 Pilgrim Street, Redford, Michigan.

17.     Defendant, Benson Oghoufo, is an owner of and serves as the President of Defendant, ATX Inc., and upon information and belief resides in Wayne County, Michigan.

18.     Defendant, Antonio George, is an owner of and serves as the Treasurer of Defendant, ATX Inc., and upon information and belief resides at 13180 Foley Street, Detroit, Michigan.

19.     At all times relevant to this Complaint, Defendants Benson Oghoufo and Antonio George, were joint "employers" of Plaintiffs and similarly situated individuals as defined by the FLSA, 29 U.S.C. § 203(d) and MCL § 408.412; *see also* 29 C.F.R. 791.2(a).

## <u>GENERAL ALLEGATIONS</u>

20.     Upon information and belief, at hire, Delivery Associates (including Plaintiffs) are paid an hourly rate of $16.00 to $16.50 per hour.

21.     Plaintiffs and Defendants' other Delivery Associate are responsible for

picking up packages from Defendants' customer, Amazon (from Amazon's warehouse facility located at 11457 Hannah Road, Romulus, Michigan), and then delivering those packages to consumers (Amazon purchasers) at business and residential addresses across Metropolitan Detroit (including, but not limited to, addresses in Wayne, Oakland and Washtenaw counties).

22.    In connection with the performance of their duties as a Delivery Associates for Defendants, Plaintiffs worked beyond 40 hours during numerous separate workweeks, but Defendants maintained a number of illegal compensation policies pursuant to which they failed and refused to pay Plaintiffs (and their other Delivery Associates) for all hours worked and pursuant to which they failed and refused to pay Plaintiffs (and their other Delivery Associates) time-and-a-half for hours worked in excess of 40 hours per week.

23.    Specifically, Plaintiffs (and Defendants' other Delivery Associates) were required to report to Defendants' "off-site" parking location at 7:30 a.m. (approximately one hour prior to their scheduled shift).

24.    Upon reporting at the off-site parking location, Plaintiffs (and Defendants' other Delivery Associates) were required to: obtain keys for the company vehicle that they would use for the daily deliveries; obtain their daily delivery route assignment; log into the Mentor smartphone application; complete a vehicle inspection and corresponding checklist; and log into the Amazon Flex

smartphone application.

25.    After the above tasks were completed, at approximately 8:00 a.m. to 8:15 a.m. each shift, Plaintiffs (and Defendants' other Delivery Associates) were required to drive the delivery vehicle to the Amazon warehouse located approximately one mile away from the off-site parking location.

26.    On a typical day Plaintiffs would arrive at the Amazon warehouse at 8:15 a.m.

27.    Once Plaintiffs (and Defendants' other Delivery Associates) arrived at the Amazon warehouse, they were required to: line up their delivery vehicle in an assigned parking location; locate the staging area where their assigned packages were located (approximately four to six racks of bags of packages); transport the racks of bags back their delivery vehicle; scan and verify each package they were assigned to deliver; scan and verify large "overflow" boxes; load the packages on their delivery vehicle; and begin the navigation application to their first delivery.

28.    On a typical day Plaintiffs (and Defendants' other Delivery Associates) would complete the above tasks and depart the Amazon warehouse to begin their delivery route at 8:30 a.m.

29.    On a typical day Plaintiffs (and Defendants' other Delivery Associates) would be tasked with completing in excess of 150 deliveries (consisting of 200 or more packages) across Metropolitan Detroit with their delivery route often taking

them in excess of 50 miles away from the Amazon warehouse.

30.     On a typical day Plaintiffs (and Defendants' other Delivery Associates) would complete my delivery route between 5:30 and 6:00 p.m.

31.     After completing their delivery routes Plaintiffs (and Defendants' other Delivery Associates) were required to fill the gas in their delivery vehicle and drive it back to the Amazon warehouse in Romulus, Michigan. On a typical day it would take Plaintiffs (and Defendants' other Delivery Associates) 30 to 45 minutes (but could sometimes take one hour or more) to get gas and drive the vehicle back to the Amazon warehouse.

32.     Upon arrival at the warehouse Plaintiffs (and Defendants' other Delivery Associates) were required to clean out the delivery vehicle and check in any undelivered packages.

33.     Once those tasks were completed Plaintiffs (and Defendants' other Delivery Associates) were required to drive the delivery vehicle back to the off-site parking location and take part in a vehicle inspection.

34.     Once the inspector completed the vehicle inspection, Plaintiffs (and Defendants' other Delivery Associates) were required to drive their personal vehicles back to the Amazon warehouse to drop off the vehicle keys, their assigned "Cat" scanner, and their assigned gas card.

35.     On a typical day Plaintiffs (and Defendants' other Delivery Associates)

would complete these tasks and leave the Amazon warehouse between 6:30 and 7:30 p.m.

36.    At the time Plaintiffs began their employment, Defendants did not maintain a timekeeping system and Plaintiffs were informed to simply write their name on a list each day when they reported to the off-site parking location and that they would be paid a flat 10 hours for each shift they worked.

37.    On or about August 8, 2019, after being reprimanded by Amazon for failing to maintain a timekeeping system, Defendants began utilizing an ADP smartphone application to record hours worked by Plaintiffs and the other Delivery Associates.

38.    Plaintiffs, and the other Delivery Associates, were instructed to record their start time (i.e. "clock-in") in the ADP application consistent with the time they arrived at the Amazon warehouse (approximately 8:15 a.m. each shift).

39.    Additionally, Plaintiffs and the other Delivery Associates, were instructed to record their end time (i.e. "clock-out") in the ADP application consistent with the time they arrived at the Amazon warehouse after completing their daily deliveries (approximately 6:30 p.m. each shift).

40.    At all times throughout their employment, regardless of how their actual hours worked were recorded (if at all), Plaintiffs were never paid more than 10 hours per shift.

41.     Specifically on a typical day, Plaintiffs (and Defendants' other Delivery Associates) would work between 11 and 12 hours (begin work at 7:30 a.m. and complete work between 6:30 and 7:30 p.m.) but only be paid for 10 hours.

42.     At all times throughout their employment, regardless of how their actual hours worked were recorded (if at all), Plaintiffs were only allowed to record hours worked during the weekdays of Monday, Tuesday, Wednesday and Thursday.

43.     Defendants issued Plaintiffs payroll checks for their Monday through Thursday shifts. Each payroll check stated an hourly wage of $16.00 and contained payment for exactly 40 hours of work.

44.     Defendants informed Plaintiffs that if they wanted to work any additional shifts (on Friday, Saturday and Sunday), they would be paid a flat daily rate of $200 for each such shift worked in the week.

45.     On many occasions during their employment, Plaintiffs worked Friday, Saturday or Sunday shifts, and Defendants paid them a separate check (distinct from their actual payroll check) for a flat rate of $200 per shift. The separate check did not include any payroll withholdings or deductions.

46.     At all times throughout their employment, Plaintiffs were not allowed to take rest breaks or meal periods. Specifically, Plaintiffs were encouraged not to take rest breaks or meal periods because it would take them outside of their 10 hour delivery window.

47.     As a result of Defendants' compensation policies described above, Plaintiffs (and Defendants' other Delivery Associates) were deprived of pay for compensable time worked, including overtime.

48.     Defendants knew or could have determined how long it took Plaintiffs (and Defendants' other Delivery Associates) to complete their daily work tasks described above and could have compensated them for the off-the-clock work they performed, but chose not to.

49.     At all relevant times, Defendants controlled Plaintiffs' (and Defendants' other Delivery Associates) work schedules, duties, protocols, applications, assignments and employment conditions.

50.     At all relevant times, Defendants used their attendance and adherence policies against Plaintiffs (and Defendants' other Delivery Associates) in order to pressure them into performing the off-the-clock work and failing to pay them for the time spent performing these activities.

51.     To the extent Defendants may have written policies requiring Delivery Associates to be paid overtime and/or for working off the clock, or requiring Delivery Associates to refrain from performing off-the-clock work, the reality is that Defendants did not follow these policies, which resulted in Delivery Associates, including Plaintiffs, not being paid for the off-the-clock work they performed, as described above.

52.     An example of specific workweeks where Defendants failed to pay Plaintiffs all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) includes the following:

### Pay Period of 07/7/2019 to 7/13/2019

- Plaintiff McKinnes was paid at a rate of $16.00 per hour for her 40.00 regular hours.
- With unpaid off-the-clock work in a range of 1 to 2 hours per shift, at four shifts per week, Plaintiff McKinnes should have been paid an additional 4 to 8 hours at her overtime rate of $24.00.

*Exhibit C*, McKinnes Pay Stub.

### Pay Period of 07/14/2019 to 7/20/2019

- Plaintiff Flemming was paid at a rate of $16.50 per hour for his 40.00 regular hours.
- With unpaid off-the-clock work in a range of 1 to 2 hours per shift, at four shifts per week, Plaintiff Flemming should have been paid an additional 4 to 8 hours at his overtime rate of $24.70.

*Exhibit D*, Flemming Pay Stub.

## RETALIATION ALLEGATIONS

53.     Throughout their employment, Plaintiffs routinely questioned Defendants Oghoufo and George about the legality of Defendants' pay practices including Defendants' failure to pay Plaintiffs' for all off-the-clock work and Defendants' failure to pay overtime compensation for hours worked during Friday, Saturday and Sunday shifts.

54.     Defendants Oghoufo and George repeatedly responded to Plaintiffs that Defendants' pay practices were legal and that Plaintiffs should be satisfied that they

were getting paid 10 hours for each work shift.

55.   On August 26, 2019 Plaintiff Flemming received a phone call from Defendants Oghoufo and George questioning him as to why he had not stayed in line for the post-shift vehicle inspection at the off-site-parking location.

56.   Plaintiff Flemming responded that he wasn't getting compensated for the time sitting in line and that he had already worked over 11 hours on the shift and was only getting compensated for 10 hours.

57.   In retaliation for Plaintiff Flemming's complaints, Defendants Oghoufo and George fired him and told him that his girlfriend, Plaintiff McKinnes, was also fired.

58.   Defendants' reason for terminating Plaintiffs' employment was that they had "filed [a] complaint" with Defendants, within the meaning of 29 U.S.C. § 215(a)(3).

59.   As a result of Defendants' retaliatory termination of Plaintiffs' employment, Plaintiffs have sustained damages including lost wages, and are entitled to recover all such amounts, as well as any other "legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3)...." 29 U.S.C. § 216(b).

## COLLECTIVE ACTION ALLEGATIONS

60.   Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA

on behalf of themselves and on behalf of:

> *All current and former hourly Delivery Associates who worked for Defendants at any time from September 20, 2016 through the date of judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

61.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and others similarly situated.

62.     Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

63.     Consistent with Defendants' policies and practice, Plaintiffs and the proposed FLSA Collective were not paid for regular wages and all premium overtime compensation when they worked beyond 40 hours in a workweek.

64.     All of the work Plaintiffs and the proposed FLSA Collective performed was assigned by Defendants, and/or Defendants were aware of all of the work the Plaintiffs and the proposed FLSA Collective performed.

65.     As part of their regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

14

- Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

- Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, for other off-the-clock work;

- Willfully failing to provide their employees, including Plaintiffs and the members of the FLSA Collective, rest breaks and meal periods;

- Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, have worked for the benefit of Defendants; and

- Altering the timecards of employees, including Plaintiffs and the members of the FLSA Collective, when they have performed over forty (40) hours of work in a workweek.

66.   Defendants are aware, or should have been aware, that federal law required it to pay Plaintiffs and the proposed FLSA Collective members for all hours work and an overtime premium for all hours worked in excess of forty (40) per workweek.

67.   Defendants' unlawful conduct was widespread, repeated, and consistent.

68.   A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar

positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

69.     The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the alteration of timecards, off-the-clock work, and nonpayment of overtime premiums – does not vary substantially among the proposed FLSA Collective members.

70.     There are many similarly situated current and former Delivery Associates who were underpaid in violation of the FLSA.   They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

71.     Plaintiffs estimate the FLSA Collective, including both current and former Delivery Associates over the relevant period, includes over one hundred members.   The precise number should be readily available from a review of Defendants' personnel and payroll records.

## **RULE 23 CLASS ACTION ALLEGATIONS**

72.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former hourly Delivery Associates who worked for Defendants at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class").   Plaintiffs reserve the right to amend this definition if necessary.

73.    The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical.   Plaintiffs reasonably estimate there are over one hundred Rule 23 Class members.   Rule 23 Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

74.    There is a well-defined community of interests among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class.   These common legal and factual questions, include, but are not limited to, the following:

>     a.    Whether the time spent by the Rule 23 Class that exceeded forty (40) hours in a workweek should have been paid at the FLSA overtime premium rate;
>
>     b.    Whether the Defendants made lawful reductions to the Rule 23 Class members' timecards; and
>
>     c.    Whether Defendants' non-payment of wages for all compensable time unjustly enriched Defendants.

75.    Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course

of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

76.     Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and they retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

77.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

78.     This case will be manageable as a Rule 23 Class action.   Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

79.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.   *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

80.     Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (29 U.S.C. § 216(b) Collective Action)

**VIOLATION OF THE FAIR LABOR STANDARDS ACT,
29 U.S.C. § 201, et seq. – FAILURE TO PAY FOR ALL HOURS
WORKED; FAILURE TO PAY OVERTIME; FAILURE TO PROVIDE
REST BREAKS AND MEAL PERIODS**

81.     Plaintiffs re-allege and incorporate all paragraphs herein and further allege as follows.

82.     At all times relevant to this action, Defendants were subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

83.     At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

84.     At all times relevant to this action, Plaintiffs and the FLSA Collective members were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

85.     Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

86.    Plaintiffs and the FLSA Collective members either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

87.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

88.    At all times relevant to this action, Defendant required Plaintiffs and all the proposed FLSA Collective members to perform off-the-clock work, and Defendant failed to pay these employees the federally mandated regular wages and overtime compensation for all work performed.

89.    The off-the-clock work performed every shift by Plaintiffs and the proposed FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

90.    In workweeks where Plaintiffs and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable.  29 U.S.C. § 207.

91.    Defendants' violations of the FLSA were knowing and willful.

Defendant knew or could have paid Delivery Associates for their off-the-clock work. Further, Defendants could have easily accounted for and properly compensated Plaintiffs and the proposed FLSA Collective members for these work activities, but did not.

92.    At all times relevant to this action, Defendants failed to provide Plaintiffs and the Delivery Associates with unpaid rest breaks and bona fide meal periods as required under the FLSA. 29 CFR §§ 785.11; 785.18; 785.19.

93.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Class Action)**

**<u>UNJUST ENRICHMENT</u>**

94.    Plaintiffs re-allege and incorporate all paragraphs herein and further allege as follows.

95.    At all times relevant to this action, Defendants promised Plaintiffs and every other Rule 23 Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed on behalf of Defendants.

96.    Upon information and belief, each Rule 23 Class member, including

21

Plaintiffs, has an hourly rate of at least $16.00 per hour.

97.    Plaintiffs and every other Rule 23 Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out the work they performed.

98.    By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendants were unjustly enriched.

99.    Plaintiffs and the Rule 23 Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

100.    Defendants received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Class Member and enjoyed the benefits derived therefrom.

101.    Upon information and belief, Defendants used the monies owed to Plaintiffs and every other Rule 23 Class Member to finance their various business expenditures.

102.    Defendants have been unjustly enriched by the retention of monies received pursuant to the sales and services Plaintiffs and the Rule 23 Class procured on behalf of Defendants, without having compensated Plaintiffs for the same.

103.    Plaintiffs and the Rule 23 Class suffered detriment as a result of Defendants' failure to compensate them for the off-the-clock work described herein,

in that Plaintiffs and the Rule 23 Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

104.   As a direct and proximate result of Defendants' actions, Plaintiffs and every other Rule 23 Class Member have suffered damages, including, but not limited to, loss of wages.

**COUNT III**
**(Brought by Plaintiffs Individually)**

**<u>VIOLATION OF THE FAIR LABOR STANDARDS ACT,</u>**
**<u>29 U.S.C. § 201, *et seq*. – RETALIATION</u>**

105.   Plaintiffs re-allege and incorporate all paragraphs herein and further allege as follows.

106.   Section 215 of the FLSA provides in relevant part:

> A.      … [I]t shall be unlawful for any person—
> …
> (3)   to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act …, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

107.   In a recent opinion addressing Section 215(a)(3), the Supreme Court held:

> To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, by oral complaints, as well as by written

ones.

*Kasten v. Saint-Gobain Performance Plastics Corp*., 563 U.S. 1, 14, 131 S. Ct. 1325, 1335 (2011).

108.   "To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action." *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006).

109.   Plaintiffs engaged in protected activity under the FLSA by complaining to Defendants about Defendants' unlawful compensation policies and practices including Defendants' failure to compensate Plaintiffs for all hours worked.

110.   Defendants took adverse action against Plaintiffs by terminating their employment on or around August 26, 2019.

111.   The adverse action Defendants took against Plaintiffs was caused by their complaints regarding Defendants' unlawful compensation policies and practices.

112.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of Section 215(a)(3), an employee is entitled to "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages

lost and an additional equal amount as liquidated damages," as well as attorneys' fees and costs. Accordingly, Plaintiffs seek to recover compensatory damages, liquidated damages, punitive damages, fees and costs.

WHEREFORE, Plaintiffs request the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' unjust enrichment claim (Count II);

c. An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, Rule 23 Class members, and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. An Order designating Plaintiffs as representatives of the FLSA Collective and the Rule 23 Class; and undersigned counsel as Class Counsel for the same;

e. An Order declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. An Order declaring Defendants' violations of the FLSA were willful;

g. An Order declaring Defendants unjustly enriched by failing to pay Plaintiffs and the Rule 23 Class for each hour they worked at a pre-established regularly hourly rate;

h. An Order granting judgment in favor of Plaintiffs and against

Defendants and awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class the full amount of damages and liquidated damages available by law;

i.      An Order declaring Defendants retaliated against Plaintiffs by terminating their employment and awarding Plaintiffs all relief available for Defendants' violation of 29 U.S.C. § 215(a)(3), including but not limited to compensatory damages, liquidated damages, and punitive damages;

j.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

k.      An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

l.      An Order awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: September 20, 2019

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
Charles R. Ash, IV (P73877)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
kstoops@sommerspc.com
crash@sommerspc.com

*Trial Counsel for Plaintiffs*